[Cite as *Fifth Third Mtge. Co. v. Bell*, 2013-Ohio-3678.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

MADISON COUNTY


FIFTH THIRD MORTGAGE COMPANY, :

    Plaintiff-Appellee, : CASE NO. CA2013-02-003

                          : O P I N I O N
  - vs -                                   8/26/2013

                                  :

MARCIA C. BELL, et al., :

    Defendants-Appellants. :


CIVIL APPEAL FROM MADISON COUNTY COURT OF COMMON PLEAS
Case No. CVE2012066


Lerner, Sampson & Rothfuss, Elizabeth S. Fuller, Kirk Sampson, 120 East Fourth Street, 8th Floor, Cincinnati, Ohio 45202, for plaintiff-appellee

Doucet & Associates, Inc., Troy Doucet, Audra Tidball, 4200 Regent Street, Suite 200, Columbus, Ohio 43219, for defendant-appellant, Greg A. Bell

Choctaw Lake Property Owners Association, c/o Michael Heyamer, 2875, Oneida Drive, London, Ohio 43140, defendant, pro se

Susan L. Taylor and Larry R. Taylor, 402 North Broadmoor Boulevard, Springfield, Ohio 45504, defendant, pro se

Landes, Pickett and Troutman, Mark Troutman, Two Miranova Place, Suite 700, Columbus, Ohio 43215-3742, for defendant, Fifth Third Bank (County Risk Sharing Authority)

Mark Landes, 250 East Broad Street, Suite 900, Columbus, Ohio 43215, for defendant, County Risk Sharing Authority

Bethany Hamilton, Assistant United States Attorney, 303 Marconi Boulevard, Street 200, Columbus, Ohio 43215, for United States of America

**RINGLAND, P.J.**

{¶ 1} Defendant-appellant, Greg A. Bell a.k.a. Greg Bell (Bell), appeals a decision of the Madison County Common Pleas Court granting summary judgment in favor of plaintiff-appellee, Fifth Third Mortgage Company (FTMC), in a foreclosure suit.[1]

{¶ 2} On July 29, 1997, Bell and his wife, Marcia, purchased a home in London, Ohio.[2] To finance the purchase, the Bells executed a promissory note in favor of State Savings Bank in exchange for a loan amount of $212,000. The note was secured by an open-end mortgage executed on the same day. On August 15, 2011, the mortgage was assigned to FTMC.

{¶ 3} In late 2011, the Bells defaulted on the payment obligations as set forth in the note and mortgage. On January 4, 2012, the Bells received a notice of default and a notice of intent to accelerate the note from FTMC. On February 29, 2012, FTMC filed a complaint in foreclosure alleging the Bells were in default under the terms of the note and requested enforcement of the mortgage. In the complaint, FTMC asserted it was in possession of the note and entitled to enforce it. FTMC also alleged that the note was secured by a mortgage which it was entitled to have foreclosed. Attached to the complaint was the originally executed note and mortgage from the Bells to State Savings Bank. The note contained no endorsements or an allonge. Also attached to the complaint was an assignment of the mortgage from Fifth Third Bank f.k.a. Fifth Third Bank, Central Ohio f.k.a. The Fifth Third Bank of Columbus successor by merger to State Savings Bank to FTMC dated August 15, 2011. The assignment was recorded at the county recorder's office on September 6, 2011.

---

1. Pursuant to Loc.R. 6(A), we sua sponte remove this case from the accelerated calendar and place it on the regular calendar for purposes of issuing this opinion.

2. Although Marcia C. Bell was named as a defendant in this action, Greg Bell is the only defendant-appellant to this appeal. As indicated in the trial court's judgment entry, Marcia Bell filed for Chapter 13 Bankruptcy and therefore no personal judgment was rendered against her. For ease of discussion, we refer to Greg Bell as "Bell" and Greg and Marcia Bell as "the Bells."

**{¶ 4}** On August 22, 2012, FTMC moved for summary judgment. In support of the motion, FTMC filed the affidavit of Jeff Brennan, an affidavit analyst for Fifth Third Bank, the loan servicer for FTMC. Brennan averred that he had "personal knowledge of the facts stated in [the] affidavit" and that he had access to the records relating to the mortgage loan subject to this action. Attached to the affidavit was a copy of the promissory note. This note, unlike the note attached to the complaint, contained two endorsements; a special endorsement to Fifth Third Bank and a blank endorsement.[3]

**{¶ 5}** Bell filed a memorandum in opposition to the motion for summary judgment or, in the alternative, a motion under Civ.R. 56(F) to conduct additional discovery as to FTMC's standing. Bell asserted that the note attached to the complaint did not confer standing to FTMC.

**{¶ 6}** The trial court granted summary judgment to FTMC on October 22, 2012. The trial court also denied Bell's motion under Civ.R. 56(F), finding Bell failed to demonstrate that additional time for discovery was necessary.

**{¶ 7}** On November 7, 2012, Bell filed a motion to reconsider and a motion to dismiss the complaint based on the Ohio Supreme Court's decision in *Fed. Home Loan Mortg. Corp. v. Schwartzwald*, 134 Ohio St.3d 13, 2012-Ohio-5017, which was decided just days after the trial court granted summary judgment. In this motion, Bell asserted FTMC lacked standing and consequently requested that the complaint be dismissed. The trial court denied Bell's motion, finding that FTMC had standing as the assignment of the mortgage occurred well before the filing of the complaint. A final appealable order granting summary judgment, a decree in foreclosure and reformation of the deed was filed on January 16, 2013. Bell

---

3. A blank endorsement is an endorsement by the holder that names no specific payee, thus making the instrument payable to the bearer and negotiable by delivery only. Black's Law Dictionary (9th Ed. 2009); R.C. 1303.25(B). A special endorsement is an endorsement that identifies a person to whom it makes the instrument payable. R.C. 1303.25(A).

appeals the trial court's decision, raising three assignments of error for review. For ease of discussion, we combine Bell's first and second assignments of error.

{¶ 8} Assignment of Error No. 1:

{¶ 9} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN [FTMC]'S FAVOR AND IN FAILING TO DISMISS THE COMPLAINT BECAUSE [FTMC] DID NOT MEET ITS BURDEN OF ESTABLISHING IT HAD STANDING UNDER THE NOTE.

{¶ 10} Assignment of Error No. 2:

{¶ 11} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN [FTMC]'S FAVOR AND IN FAILING TO DISMISS THE COMPLAINT BECAUSE THE EVIDENCE SUBMITTED BY [FTMC] DEMONSTRATES IT DID NOT COMPLY WITH CONDITIONS PRECEDENT SET FORTH IN THE MORTGAGE AS A MATTER OF LAW.

{¶ 12} In his first and second assignments of error, Bell challenges the trial court's decision granting summary judgment in favor of FTMC. In his first assignment of error, Bell asserts that summary judgment was improper and the complaint should have been dismissed because FTMC failed to demonstrate it had standing under the note on the date the complaint was filed. In his second assignment of error, Bell argues that summary judgment was inappropriate because FTMC failed to establish that it had complied with all the conditions precedent as required by the mortgage before filing this current action.

## A. Standing

{¶ 13} "Standing is a preliminary inquiry that must be made before a trial court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, ¶ 9. As standing is a question of law, our review is de novo. *In re Dye*, 12th Dist. Fayette Nos. CA2011-04-004, CA2011-04-005 and CA2011-04-006, 2012-Ohio-2570, ¶ 11.

{¶ 14} Recently, the Supreme Court of Ohio addressed the issue of standing in a foreclosure action. *Schwartzwald* at ¶ 20-28. In *Schwartzwald*, the Supreme Court

- 4 -

determined that a plaintiff in a foreclosure action must have standing at the time the complaint is filed in order to invoke the jurisdiction of the common pleas court. *Id.* at ¶ 24-25. "It is an elementary concept of law that a party lacks standing *to invoke the jurisdiction* of the court unless he has, in an individual or representative capacity, some real interest in the subject matter of the action." (Emphasis sic.) *Id.* at ¶ 22. The court in *Schwartzwald* also found that a lack of standing cannot be cured by "post-filing events" that supply standing. *Id.* at ¶ 26. Moreover, a lack of standing "cannot be cured by receipt of an assignment of the claim or by substitution of the real party in interest." *Id.* at ¶ 41. In *Schwartzwald*, the bank conceded that there was no evidence it suffered any injury at the time it commenced the foreclosure action, as it did not have an interest in the note or mortgage. *Id.* at ¶ 28. Accordingly, the court found the bank did not have standing to invoke the jurisdiction of the court. *Id.*

{¶ 15} Bell asserts there was no evidence that "[FTMC] was in possession of the [e]ndorsed note on the date of filing its complaint," and accordingly, FTMC lacked standing at the time of filing the complaint. Bell asserts that "the current holder of the note is the party with standing under the note." Contrary to Bell's arguments, *Schwartzwald* does not stand for the proposition that only the holder of the note has standing.

{¶ 16} Under the facts of this case, FTMC sufficiently established that it suffered an injury at the time it filed this foreclosure action as it had an interest in the note and the mortgage. Accordingly, FTMC satisfied the requirements of *Schwartzwald* and demonstrated that it had standing.

{¶ 17} In its complaint, FTMC alleged it was in possession and entitled to enforce a note. It also alleged that the note was secured by a mortgage which it was entitled to foreclose. FTMC attached to its complaint copies of the original promissory note and mortgage executed by the Bells and State Savings Bank. The mortgage specifically

references the note, stating "[t]his debt is evidenced by Borrower's note dated the same date as this Security Instrument." The note contains no endorsements. FTMC also attached the assignment of the mortgage to FTMC from "Fifth Third Bank fka Fifth Third Bank, Central Ohio fka The Fifth Third Bank of Columbus sbmt State Savings Bank."

{¶ 18} On its face, the assignment shows a transfer of the mortgage from the original lender, State Savings Bank, by State Saving's successor by merger, Fifth Third Bank, to FTMC. The assignment was dated August 15, 2011, and recorded at the county recorder's office on September 6, 2011. FTMC filed suit several months later on February 29, 2012. Therefore, FTMC established it held an interest in the mortgage prior to the commencement of the action by way of this assignment.

{¶ 19} As to the note, the unendorsed copy of the note was insufficient to show that FTMC was a "holder" of the note; however, this is not to say that FTMC did not have an interest in the note or that it was not entitled to enforce it.

{¶ 20} Ohio's version of the Uniform Commercial Code (U.C.C.) governs who may enforce a note. R.C. 1301.01 et seq.[4] Under R.C. 1303.31, a "person entitled to enforce" an instrument includes the holder of the instrument. R.C. 1303.31(A)(1). A holder includes a person who is in possession of an instrument payable to bearer. R.C. 1301.01(T)(1)(a). "When an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone." R.C. 1303.25(B). Pursuant to R.C. 1303.31(A)(2), a nonholder in possession of the instrument who has the rights of a holder is also entitled to enforce the instrument. An instrument is transferred when it is delivered by a person, other than the issuer, for the purpose of giving the person receiving the delivery the

---

4. R.C. 1301.01 was repealed by Am.H.B. No. 9, 2011 Ohio Laws File 9, effective June 29, 2011. That act amended the provisions of R.C. 1301.01 and renumbered that section so that it now appears at R.C. 1301.201. Because R.C. 1301.201 only applies to transactions entered on or after June 29, 2011, we apply R.C. 1301.01 to this appeal.

right to enforce. R.C. 1303.22(A). If the transferee is not a holder because the transferor did not endorse, the transferee is nevertheless a person entitled to enforce the instrument if the transferor was a holder at the time of transfer. R.C. 1303.22(B); R.C. 1303.22 cmt. 2.

{¶ 21} FTMC's allegations that it was in possession of a note and entitled to enforce it, combined with the copy of the unendorsed note, at the very minimum, demonstrated that FTMC was entitled to enforce as a nonholder in possession. *See* R.C. 1303.22 (B); *Deutsche Bank Natl. Trust Co. v. Gardner*, 8th Dist. Cuyahoga No. 92916, 2010-Ohio-663, ¶ 18-22. The note attached to the complaint was payable to State Savings Bank.[5] Therefore, State Savings Bank was the initial holder because the note was payable to it as an identified person. R.C. 1303.25(A). The fact that FTMC was in possession of the unendorsed note along with language used in the mortgage and the assignment of the mortgage showed a chain of custody and indicated that State Savings Bank or some other person transferred the note to FTMC with the intent that FTMC be entitled to enforce the note. Bell never challenged FTMC's possession of this unendorsed note. Based on these facts, FTMC had an interest in the note as a nonholder in possession.

{¶ 22} FTMC's status as a nonholder in possession established its interest in the note for the purposes of standing. Moreover, we note that at summary judgment, FTMC further established its ability to enforce the note as a holder. At summary judgment, FTMC presented an authenticated copy of the note which contained a blank endorsement. FTMC's possession of this note sufficiently established its status as a holder. Former R.C. 1301.01(T)(1)(a).

{¶ 23} Accordingly, based on these facts, FTMC demonstrated that it had standing at the time it commenced this foreclosure action as it had an interest in the note and the

---

5. Section 1 of the note states: "In return for a loan that I have received, I promise to pay U.S. $212,000 * * * to the order of the Lender. The Lender is State Savings Bank."

mortgage. As FTMC satisfied the requirements of *Schwartzwald* and demonstrated that it had standing, we now consider the merits of the foreclosure action.

**B. Summary Judgment Motion**

{¶ 24} This court reviews a trial court's decision on summary judgment under a de novo standard of review. *Deutsche Bank Natl. Trust Co. v. Sexton*, 12th Dist. Butler No. CA2009-11-288, 2010-Ohio-4802, ¶ 7. Summary judgment is appropriate under Civ.R. 56 when (1) there is no genuine issue of material fact remaining to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor. *BAC Home Loans Serv., L.P. v. Kolenich*, 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 17 (12th Dist.), citing *Zivich v. Mentor Soccer Club, Inc.*, 82 Ohio St.3d 367, 369-370 (1998). The party requesting summary judgment bears the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Sexton* at ¶ 7. Once a party moving for summary judgment has satisfied its initial burden, the nonmoving party "must then rebut the moving party's evidence with specific facts showing the existence of a genuine triable issue; it may not rest on the mere allegations or denials in its pleadings." *Id.*; Civ.R. 56(E).

{¶ 25} Specifically, as to foreclosure claims, "[a] party seeking to foreclose on a mortgage must establish execution and delivery of the note and mortgage; valid recording of the mortgage; it is the current holder of the note and mortgage; default; and the amount owed." *Kolenich* at ¶ 26; citing *Countrywide Home Loans, Inc. v. Baker*, 10th Dist. Franklin No. 09AP-968, 2010-Ohio-1329, ¶ 8. On appeal, Bell does not challenge that the note and mortgage were executed or delivered or that FTMC is the holder of the mortgage. Bell also does not challenge the amount owed or that he was in default on the note. Rather, Bell's

arguments focus on whether FTMC presented admissible evidence to establish that it was a holder of the note and whether FTMC complied with all conditions precedent, required by the mortgage, before filing this foreclosure action.

### 1. FTMC as Holder of the Note

{¶ 26} In support of its motion for summary judgment, FTMC filed an affidavit from Jeff Brennan, an affidavit analyst for Fifth Third Bank, the loan servicer for FTMC. Bell contends that the endorsed note attached to Brennan's affidavit should not have been considered by the trial court because it was not properly authenticated. Bell asserts that Brennan's affidavit did not: (1) demonstrate his competency to testify and authenticate the note; (2) indicate that he compared the copy to the original; or (3) indicate that FTMC was in possession of the note endorsed in blank.

{¶ 27} To be considered in a summary judgment motion, Civ.R. 56(E) requires an affidavit to be made on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify to the matters stated in the affidavit. Civ.R. 56(E). "Absent evidence to the contrary, an affiant's statement that his affidavit is based on personal knowledge will suffice to meet the requirement of Civ.R. 56(E)." *Wells Fargo Bank v. Smith*, 12th Dist. Brown No. CA2012-04-006, 2013-Ohio-855, ¶ 16. Additionally, documents referred to in an affidavit must be attached and must be sworn or certified copies. Civ.R. 56 (E). Verification of these documents is generally satisfied by an appropriate averment in the affidavit, for example, that "such copies are true copies and reproductions." *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459 (1981), paragraph three of the syllabus; *Deutsche Bank Natl. Trust Co. v. Najar*, 8th Dist. Cuyahoga No. 98502, 2013-Ohio-1657, ¶ 20.

{¶ 28} After a review of Brennan's affidavit, we find that it sets forth the necessary information to be considered on summary judgment under Civ.R. 56(E). Brennan's affidavit

stated his position as an Affidavit Analyst for Fifth Third Bank, the loan servicer for FTMC. According to Brennan, as servicer, Fifth Third Bank is responsible for, among other things, receiving and crediting payments made pursuant to the terms of notes and mortgages. Brennan also stated that he had "personal knowledge of the facts stated in this affidavit" and had reviewed the business records of Fifth Third Bank, including the mortgage loan at issue in this case. Accordingly, Brennan's statement that he had "personal knowledge" of the facts contained in the affidavit sufficiently established the personal knowledge requirement. Moreover, Brennan's description of the relationship between Fifth Third Bank and FTMC, his position with Fifth Third Bank, and his description of relevant business records also sufficiently established his competency to testify to these matters. *See Najar* at ¶ 27; *Deutsche Bank Natl. Trust Co. v. Gardner*, 8th Dist. Cuyahoga No. 92916, 2010-Ohio-663, ¶ 10 (servicer of borrower's loan competent to testify regarding content of documents in borrower's loan file with which he was personally familiar). In addition, contrary to Bell's assertion, the affidavit specifically stated that Brennan personally examined Fifth Third Bank's business records and attached a "true and accurate copy" of the promissory note executed by the Bells. This statement indicates that Brennan compared the attached copy of the note to the original note contained in Fifth Third Bank's records. Finally, the affidavit implicitly indicates that FTMC is in possession of the note as Brennan had "direct access" to Fifth Third's records, and after reviewing the records, attached a "true and accurate copy" of the promissory note found in these records. Accordingly, Brennan's affidavit properly authenticated the attached documents, including the note and mortgage.

{¶ 29} Bell next contends that, even if the note was properly authenticated, the first endorsement on the note is from Fifth Third Bank, Central Ohio and not the original lender, State Savings Bank. Accordingly, Bell asserts there is a genuine issue of material fact as to the validity of the endorsements and which entity was in possession of the note and entitled

to enforce it. In making this argument, Bell contends FTMC failed to present competent evidence under Civ.R. 56(E) to establish that State Savings Bank was merged into Fifth Third Bank, Central Ohio.

{¶ 30} The record indicates that FTMC filed a "Notice of Filing of Proof of Merger Documents." These merger documents include a signed certificate by the secretary of state's office and the seal of the office of secretary of state. Based on the certification, these documents are self-authenticating under Evid.R. 902(4). *SFJV 2005, L.L.C. v. Ream*, 187 Ohio App.3d 715, 2010-Ohio-1615, ¶ 51 (2d Dist.). Moreover, this certification rendered the documents admissible for summary judgment purposes. *Koop v. Speedway SuperAmerica, LLC,* 12th Dist. Warren No. CA2008-09-110, 2009-Ohio-1734, ¶ 8-9 (documents submitted in support or opposition of summary judgment must be sworn, certified, or otherwise authenticated by affidavit.) These merger documents demonstrate that State Savings Bank merged out of existence in 1998, with the surviving entity being titled The Fifth Third Bank of Columbus and this entity later changed its name to Fifth Third Bank, Central Ohio which was also eventually merged into Fifth Third Bank, Western Ohio, which changed its name to Fifth Third Bank, in October 2000. Consequently, Fifth Third Bank, Central Ohio as the successor by merger to State Savings Bank had the authority to endorse the promissory note. Fifth Third Bank, Central Ohio endorsed the note to Fifth Third Bank, and Fifth Third Bank subsequently endorsed the note in blank. As FTMC was in possession of the note containing a valid blank endorsement, FTMC was the holder of the note and entitled to enforce it upon Bell's default. *See* R.C. 1303.31; R.C. 1303.25(B).

{¶ 31} Based on the foregoing, FTMC properly demonstrated its status as a holder of the note by way of Brenan's affidavit.

## 2. Notice of Default

{¶ 32} Although Bell does not dispute that he was in default, in his second assignment

of error, he argues that FTMC failed to meet its initial burden of showing that there was no genuine issue of material fact regarding whether FTMC complied with the conditions precedent as set forth in the mortgage prior to filing this foreclosure action. Specifically, Bell claims that FTMC failed to provide him with at least 30 days to cure the default and failed to notify him that the failure to cure would result in "judicial proceedings" and "sale of the property."

{¶ 33} If a note or mortgage requires notice of default and/or acceleration, the lender must comply with the notice terms, or the complaint may be dismissed. *See Fifth Third Mtge. Co. v. Wizzard*, 12th Dist. Butler No. CA2012-11-226, 2013-Ohio-3084, ¶ 27 ("under Ohio law, a foreclosure action brought by a lender who has failed to comply with the notice terms embodied in the note executed between the parties may be dismissed"). Paragraph 8 of the note provides, in part:

> (C) Notice of Default
> If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be *at least 30 days* after the date on which the notice is delivered or mailed to me.

{¶ 34} In addition, the mortgage states that the notice must specify "a date, *not less than 30 days* from the date the notice is given to Borrower, by which the default must be cured." (Emphasis added.) As to when notice was deemed to have been received, Paragraph 14 of the mortgage provides:

> Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. * * * Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when provided in this paragraph.

{¶ 35} In support of its motion for summary judgment, FTMC attached an

authenticated copy of a demand letter sent to Bell. This letter, dated January 4, 2012, notified Bell that he was in default on the mortgage loan and provided the amount that was necessary to cure the default. Moreover, the letter stated: "In order to cure this default we must receive the past due amount *within 30 days from the date* of this letter." (Emphasis added.) The letter also informed Bell that the failure to pay the past due amount "will result in acceleration of your loan and the foreclosure of the property."

{¶ 36} After a review of the letter and the notice provisions found within the note and mortgage, we find that FTMC complied with the conditions precedent before filing the complaint in this case. As set forth in Paragraph 14 of the mortgage, the letter was deemed received on the date it was mailed; specifically January 4, 2012. In addition, the letter specified that Bell must cure the default "within 30 days." The note and mortgage each provided the Bells with a *minimum* of 30 days in which to cure the default. As the letter provided that Bell had the opportunity to cure the default before and up until the 30th day, FTMC complied with the requirements of the note and mortgage that he receive "at least 30 days" or otherwise stated "not less than 30 days." In addition, the record indicates that FTMC did not file this foreclosure action until February 29, 2012, 56 days after Bell received this notice, and well beyond the minimum 30-days requirement.

{¶ 37} As to the issue of whether Bell was notified that the failure to cure would result in "judicial proceedings" and the "sale of the property," the letter specifically stated that the failure to cure "will result in acceleration of your loan and the foreclosure of the property." Bell did not aver in his affidavit that he did not understand from this language that "foreclosure" meant a judicial proceeding or could result in the sale of the property. Accordingly, there is no genuine issue of fact as to whether Bell was notified that the failure to cure would result in "foreclosure by judicial proceeding and sale of the property." Accordingly, FTMC complied with all conditions precedent in the note and mortgage.

{¶ 38} As the trial court properly found that FTMC had standing to bring this foreclosure action and that summary judgment was appropriate, Bell's first and second assignments of error are overruled.

{¶ 39} Assignment of Error No. 3:

{¶ 40} THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN [FTMC]'S FAVOR AND IN FAILING TO GRANT MR. BELL'S MOTION UNDER CIV.R. 56(F) FOR TIME TO CONDUCT DISCOVERY BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST CONCERNING MR. BELL'S DEFENSES OF UNCLEAN HANDS AND [FTMC]'S FAILURE TO MITIGATE ITS DAMAGES.

{¶ 41} In his third and final assignment of error, Bell argues the trial court erred in denying his request under Civ.R. 56(F) for more time to conduct discovery regarding his defenses of unclean hands and FTMC's failure to mitigate its damages. Bell further asserts that genuine issues of material fact remained as to these defenses which precluded summary judgment.

{¶ 42} We begin by discussing Bell's request for additional time under Civ.R. 56(F). Civ.R. 56(F) provides as follows:

> Should it appear from the affidavits of a party opposing the motion for summary judgment that the party cannot for sufficient reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make such other order as is just.

Thus, "Civ.R. 56(F) 'affords a party a mechanism whereby it can seek deferral of action on a motion for summary judgment so that it may obtain affidavits opposing the motion or conduct discovery related to it.'" *BAC Home Loans Servicing, L.P. v. Kolenich,* 194 Ohio App.3d 777, 2011-Ohio-3345, ¶ 18 (12th Dist.), quoting *Gates Mills Invest. Co. v. Pepper Pike,* 59 Ohio App.2d 155, 168-169 (8th Dist.1978). A party seeking a continuance to conduct discovery

under Civ.R. 56(F) must support the motion by a proper affidavit. *Kolenich* at ¶ 18. General averments requesting a continuance for the purpose of discovery are insufficient as the party must state a factual basis and reasons why the party cannot present sufficient documentary evidence without a continuance. *Bank of Am., N.A. v. Singh*, 12th Dist. Butler No. CA2012-07-146, 2013-Ohio-1305, ¶ 16.

{¶ 43} A trial court maintains discretion to manage the discovery process. *Id.* at ¶ 17. Accordingly, on appeal, a decision regarding the regulation of discovery will not be reversed absent an abuse of discretion. *Kolenich* at ¶ 19.

{¶ 44} We find that the trial court did not abuse its discretion in refusing to continue the matter so that additional discovery could be conducted. Bell properly supported the motion by way of his affidavit. However, the affidavit failed to provide sufficient reasons why he was unable to present evidence in support of his affirmative defenses without the continuance. In his affidavit, Bell claimed his failure to conduct discovery in this case was based on FTMC's alleged lack of standing and because he was "exploring other avenues to resolve this case." The record indicates that the present lawsuit was commenced on February 29, 2012 and the motion for summary judgment was not filed until August 22, 2012. At the time Bell filed his answer, he was aware of his possible defenses including, unclean hands, the failure to mitigate damages, and standing as he included these defenses in his answer. The Rules of Civil Procedure allow parties to conduct discovery immediately "after the commencement of the action." Civ.R. 33; Civ.R. 34. However, Bell admitted that he had "not conducted discovery in this case." Given the fact that he had ample time to conduct discovery prior to responding to the motion for summary judgment, yet failed to do so, we find the trial court did not abuse its discretion in denying Bell's motion under Civ.R. 56(F).

{¶ 45} As to Bell's defense of unclean hands, he argues that because this "foreclosure action is based on Mr. Bell's alleged failure to make mortgage payments, the fact that Fifth

Third [Bank] implied that it would help if Mr. Bell stopped making payments * * * shows that [FTMC] does not have clean hands in relation to Mr. Bell's alleged default." Essentially, Bell argues that FTMC's loan servicer, Fifth Third Bank, led him to believe FTMC would modify his loan after he missed three payments.

{¶ 46} In order for the doctrine of unclean hands to apply, the offending conduct must constitute "reprehensible, grossly inequitable, or unconscionable conduct, rather than mere negligence, ignorance, or inappropriateness. * * * Furthermore, 'the unclean hands doctrine should not be imposed where a party has legal remedies available to address an opposing party's asserted misconduct.'" *PNC Mtg. v. Innis*, 12th Dist. Preble No. CA2010-10-013, 2011-Ohio-5594, ¶ 14, quoting *Deutsche Bank National Trust Co. v. Pevarski,* 187 Ohio App.3d 455, 2010-Ohio-785, ¶ 24 (4th Dist.).

{¶ 47} As an initial matter, we note that in reviewing the trial court's decision, it appears the trial court arguably weighed the evidence, finding Bell's "reliance on an oral statement from a customer service representative directing him to default on his mortgage obligation was not reasonable." However, we do not find that such a choice of words warrants a reversal in this case. Even accepting Bell's allegations as true, we cannot conclude that there is a genuine issue of material fact regarding whether FTMC came to court with "unclean hands," thus precluding summary judgment.

{¶ 48} In opposing summary judgment, Bell filed his own affidavit in which he asserted that after experiencing financial hardship, he contacted Fifth Third Bank "to see about a loan modification" so that he could keep his home. He further averred: "When I contacted Fifth Third Bank, the customer service representative to whom I spoke informed me that Fifth Third [Bank] could not help unless I was three months behind on my mortgage payments." Based on this representation, Bell claimed that he "reasonably interpreted this to mean that [FTMC] would help if [he] became three months behind" on mortgage payments. However,

according to Bell, FTMC later refused to provide any assistance and instead filed this current action.

{¶ 49} Even accepting Bell's allegations as true, we cannot conclude that FTMC acted in bad faith, and thus had unclean hands. "[A lender's] decision to enforce the written agreements cannot be considered an act of bad faith." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443 (1996). As discussed below, other appellate districts of this state have addressed arguments similar to the arguments presented by Bell and each has determined that a lender's decision to enforce a written agreement is not an act of bad faith.

{¶ 50} In *U.S. Bank Natl. Assn. v. Mobile Assoc. Natl. Network Sys., Inc.,* 195 Ohio App.3d 699, 2011-Ohio-5284 (10th Dist.), borrowers asserted that the bank had agreed to negotiate a modification and that the bank was estopped from foreclosing until the parties completed the negotiations. In rejecting this argument, the Tenth District found that the mortgage provided that the bank was entitled to immediately initiate foreclosure proceedings in the event of a default, and therefore, the decision to pursue its contractual remedies could not be considered an act of bad faith. *Id.* at ¶ 31-32.

{¶ 51} Similarly, in *CitiMortgage Inc. v. Parrish*, 5th Dist. Delaware No. 12 CAE 02 0011, 2012-Ohio-3778, the court found the bank did not act in bad faith in pursuing foreclosure on borrower's default where the mortgage did not require the bank to participate in loan modification negotiations. *Id.* at ¶ 29. Rather, the mortgage gave the bank the right to full payment and foreclosure on the borrower's breach. *Id.*

{¶ 52} In *GMAC Mtg., LLC v. Jackson*, 3d Dist. Marion No. 9-13-01, 2013-Ohio-2150, the borrower argued the bank had unclean hands because it represented that he should intentionally miss his contractually obligated mortgage payments in order to qualify for their modification process and he followed this advice to his detriment. According to the borrower, if he had not received this advice, he would not have missed the payments. In rejecting this

argument, the Third District noted that even if it accepted the borrowers allegations as true, the borrower failed to present evidence that the bank told him he would qualify for a loan modification or that the bank agreed to waive payment. *Id.* at ¶ 31, 34. The court also found that the mortgage contained a clause which permitted the bank to accept payments from the borrower but that did not waive any of borrower's obligations or prevent the lender from insisting on strict performance of the mortgage obligations. *Id.* at ¶ 34. Accordingly, the court concluded that based upon the "lack of proof of any agreement to waive payment, we cannot find that the 'unclean hands' doctrine applies here, or that [borrower's] affidavit gives rise to a genuine issue of material fact." *Id.* at ¶ 35. We find these cases to be persuasive.

{¶ 53} Here, the note and mortgage required Bell to make monthly payments on the first of each month. The failure to do so constituted default. Once Bell defaulted on the note and mortgage, a fact that he readily admitted, the balance was accelerated, and FTMC was entitled, pursuant to the parties' agreement, to pursue a foreclosure action against him. *See Wilborn v. BankOne Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 18. There is nothing in the mortgage which required FTMC to allow Bell to participate in loan modification or provide him with "assistance" before exercising its right to foreclose. Rather, the mortgage document gave FTMC the right, upon Bell's default, to pursue full payment and foreclosure without satisfying any other conditions besides proper notice. Specifically, paragraph 21 of the mortgage provides that if the Bells do not timely cure the default, FTMC has the option to "require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding." Accordingly, FTMC's decision to pursue its contractual remedies cannot be considered to be an act of bad faith.

{¶ 54} Moreover, the allegations set forth in Bell's affidavit are insufficient to create an inference of a modification of the terms of the parties' written agreement contained within the

mortgage. This court has recently reiterated that because a modification of a mortgage, involves a transfer of realty interests, the statute of frauds would apply and require the modification be in writing. *See Wells Fargo Bank, N.A. v. Baldwin*, 12th Dist. Butler No. CA2011-12-227, 2012-Ohio-3424, ¶ 12-13. "Even if [a party] were able to avoid any Statute of Frauds concerns, * * * for a verbal agreement to have the effect of altering or modifying the terms of a prior written contract, it must be valid and binding contract itself, resting upon some new and distinct consideration." *Id.* at ¶ 14, citing *Thurston v. Ludwig*, 6 Ohio St. 1, 6-7 (1856). "However, to the extent that an oral agreement of modification of an existing contract – although without consideration – has been acted upon by the parties, it is binding upon them and may not be repudiated." *Id.* at ¶ 18.

**{¶ 55}** Bell failed to present any evidence that the parties executed a written modification of the terms of the original mortgage.[6] Bell also did not provide any evidence of new consideration to support the alleged promise that FTMC would later modify the terms of his mortgage. Finally, Bell failed to submit evidence that indicated FTMC engaged in subsequent conduct acknowledging the alleged modification or its mutual assent to the modification.[7]

**{¶ 56}** As FTMC choose to enforce the written agreement between the parties and file this foreclosure action based on Bell's default, we cannot find that the "unclean hands" defense applies here, or that Bell's affidavit gives rise to a genuine issue of material fact as to his defenses. Accordingly, the trial court properly granted summary judgment to FTMC. Bell's third and final assignment of error is overruled.

---

6. He also did not aver in his Civ.R. 56(F) motion that additional discovery could lead to such evidence.

7. Bell also argues that FTMC's failure to modify the loan and instead encourage him to miss three mortgage payments created damages which could have been mitigated. As we found that Bell failed to present evidence of an enforceable modification we find no merit to this argument.

{¶ 57} Judgment affirmed.

PIPER and M. POWELL, JJ., concur.